Salvador **VALLE**, Plaintiff,

v.

**THE CITY OF CHICAGO, a municipal corporation, Defendant.**

**No. 97 C 3868.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 30, 1997.

---

Dale D. Pierson, Thomas J. Pleines, Catherine Marie Chapman, Alexia M. Kulwiec, Baum, Sigman, Auerbach, Pierson & Neuman, Chicago, IL, for plaintiff.

Patricia Carroll–Smit, George Thomson, Assistants Corp. Counsel, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Plaintiff Salvadore Valle has sued the City of Chicago for violating his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 121011–12213. The City has

moved to dismiss the Complaint. For the reasons set forth below, the motion is denied.

## I. Background

Salvadore Valle would like to be a Chicago policeman. Valle took his first step toward achieving this goal in December 1995 when he was hired by the Chicago Police Department ("CPD") as a probationary police officer. *See* Compl. ¶ 7. As part of the Basic Recruit Training Program in which he was enrolled, Valle was required to participate in physical training classes. *See id.* These classes required prospective officers to engage in strenuous physical exercise: in particular, recruits had to demonstrate an ability to run 1.5 miles in under 15 minutes. *See id.* ¶ 13.[1] Valle was unable to satisfy this requirement due to a condition known as "rhabdomyolysis," which causes the "breakdown-damage of muscle tissue due to heavy physical exertion." *Id.* ¶ 8. This condition caused Valle to faint and become seriously ill when attempting to meet the Training Program's running requirement. *See id.* ¶¶ 8–10.

When Valle was unable to complete the December Training Program, the CPD allowed him to withdraw and gave him a clerical position while he prepared to try again in the March 1996 Program. *See id.* ¶ 9. Unfortunately, Valle's rhabdomyolysis prevented him from successfully completing the March Program, and he elected to take a leave of absence so that he could participate in a "physical reconditioning" program prescribed by his doctor. *Id.* ¶ 11. While he was on leave, Valle requested that the CPD accommodate his condition by relaxing its running requirement. *See id.* ¶ 13. In October 1996, the CPD denied Valle's request and canceled his leave of absence, thereby terminating him as a probationary police officer. *See id.* ¶ 15. Valle now claims that the CPD's refusal to accommodate his disability violated the ADA.

## II. Discussion

### A. Elements of an ADA Claim

The ADA prohibits employers from discriminating against any "qualified individual with a disability because of the disability." 42 U.S.C. § 12112. The ADA addresses two general types of discrimination: (1) prototypical cases of disparate treatment, where an employer takes an adverse action against a disabled person because of a bias against persons with that type of disability, *see id.* § 12112(b)(1), and (2) cases where an employer refuses to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," *see id.* § 12112(b)(5). Courts treat these two types of claims differently in terms of the prima facie showing required of plaintiffs, and thus "it is important for the plaintiff to be clear about the nature of the claim he or she is asserting." *Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir.1997).

■ Although Valle's Complaint lacks the requisite clarity, *see* Compl. ¶ 16 (stating that the CPD "unlawfully discriminated against Officer Valle because of his disability of Rhabdomyolysis by limiting his employment opportunities and/or by denying him a reasonable accommodation ...."), the parties' briefs indicate that they view this case as falling within the "reasonable accommodations" genre. *See* Def.'s Br. at 4; Pl.'s Br. at 2. Accordingly, Valle must allege facts sufficient to establish that: (1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of the job with or without a reasonable accommodation, and (3) he was excluded from the job solely because of his disability. *See Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1284 (7th Cir.1996); *see also Knapp v. Northwestern University*, 101 F.3d 473, 478 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2454, 138 L.Ed.2d 212 (1997); *Byrne v. Board of Educ.*, 979 F.2d 560, 563 (7th Cir.1992).[2]

---

1. The Complaint does not specify the exact time limit imposed by the CPD. Paragraph 13 of the Complaint only indicates that Valle requested that the requirement be relaxed to permit him to try to run the 1.5 miles in 15 minutes, so we may infer that the normal requirement is somewhat faster than this.

2. *Knapp* and *Byrne* arise under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). Because of the substantial similarity between the ADA and Rehabilitation Act, courts normally treat precedent under the two statutes as interchangeable. *See Gile v. United Airlines*, 95 F.3d 492, 496 (7th Cir.1996).

### B. Motion to Dismiss Standard

The parties' briefs reflect some disagreement about the degree of factual detail that Valle must include in his Complaint. The defendant attacks Valle's Complaint on the grounds that "the alleged facts do not establish that plaintiff is 'disabled' within the meaning of the ADA, and ... they do not establish [that] he is 'otherwise qualified' to perform the essential functions of a probationary police officer." Def.'s Br. at 4.[3] In response, Valle contends that under the Federal Rules he is "not required and is not encouraged to allege every fact in support of the final judgment in his complaint." Pl.'s Br. at 3.

■ A return to first principles is in order here. Under the Federal Rules, a Complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). The purpose of such pleadings is to give "the opposing party fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved; the discovery process bears the burden of filling in the details." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1215 (2d ed.1990). In light of this purpose,

> pleadings need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided. However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.

*Id.* § 1216. In a similar vein, the Seventh Circuit has recently warned us to avoid the "misconception ... that a complaint must allege all of the facts essential to recovery under the plaintiff's theory.... A complaint may not be dismissed unless it is impossible to prevail 'under any set of facts that could be proved consistent with the allegations.' " *Albiero v. City of Kankakee,* 122 F.3d 417, 419 (7th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

Thus, it is not necessary for Valle to provide every fact required to prove that he is "disabled" or that he is "otherwise qualified" to be a Chicago policeman. At the same time, it will not suffice for Valle to simply assert these things as "unsupported conclusions of law." *City Nat'l Bank v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir. 1994). We must focus on the facts, taking all of the well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the plaintiff, and drawing reasonable inferences on his behalf. *See Lanigan v. Village of E. Hazel Crest,* 110 F.3d 467, 468 (7th Cir.1997), *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995). To this task we now turn.

### C. Disability Prong

■ An individual is "disabled," as defined by the ADA, if he has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A).[4] Valle's allegations clearly satisfy the "impairment" part of this definition. The EEOC regulations promulgated pursuant to the ADA indicate that any disorder or condition affecting a person's musculoskeletal or cardiovascular systems qualifies as an impairment. *See* 29 C.F.R. § 1630.2(h)(1). Although Valle has alleged a condition affecting these systems, *see* Compl. ¶ 8, the CPD argues that he has only alleged an "intermittent" condition, of the sort which has been held not to constitute an impairment. *Cf. Vande Zande v. Wisconsin Dep't of Admin.,* 44 F.3d 538, 544 (7th Cir. 1995) ("Intermittent, episodic impairments are not disabilities, the standard example being a broken leg."). But this argument misconstrues Valle's allegations: the Complaint indicates that Valle suffers from a

---

**3.** In this motion the CPD does not challenge the sufficiency of Valle's allegations that he was excluded from the CPD solely because of his disability.

**4.** An individual may also be disabled if he has "a record of impairment" or is "regarded as having such an impairment," 42 U.S.C. § 12102(2)(B), (C), but these are not alleged in this case.

*permanent* condition (rhabdomyolysis) that manifests itself intermittently, whenever Valle engages in "heavy physical exertion." Compl. ¶ 8. As the Seventh Circuit has explained, "an intermittent impairment that is a characteristic manifestation of an admitted disability is, we believe, a part of the underlying disability and hence a condition that the employer must accommodate." *Vande Zande*, 44 F.3d at 544. Under this reasoning, Valle has adequately alleged that he has an impairment.

■ The more difficult question in this case is whether Valle's impairment—inability to engage in "heavy physical exertion"—substantially limits him in a "major life activity." Major life activities are basic life functions, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Knapp v. Northwestern Univ.*, 101 F.3d 473, 479 (7th Cir.1996); *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir.1995). The distinguishing characteristic of major life activities is that they are "activities that the average person in the population can perform with little or no difficulty." 29 C.F.R. Pt. 1630, App. § 1630.2(i); *see also Knapp*, 101 F.3d at 479. Thus, at first glance it would seem that "heavy physical exertion" cannot be a major life activity because it is difficult by its very nature—no one can perform it with "little or no difficulty."

The matter is not so simple, however. An inability to engage in heavy physical exertion might substantially limit Valle's ability to engage in the major life activity of "working." The EEOC regulations provide some guidance as to when a person's ability to work is "substantially limited":

> With respect to the major life activity of working ... [t]he term substantially limits means significantly restricted in the ability

to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). Thus, the mere fact that Valle's impairment may prevent him from working as a Chicago policeman does not establish that his ability to work is substantially limited. *Cf. Roth*, 57 F.3d at 1454–55 (inability to fulfill the harsh demands of a pediatrics residency does not amount to a disability); *Daley v. Koch*, 892 F.2d 212, 215 (2d Cir.1989) (inability to meet the "unique qualifications" of a New York City police officer does not constitute a substantial limit on one's ability to work); *see also Knapp*, 101 F.3d at 481 (being an astronaut, firefighter, race car driver, or basketball player is not a major life activity). But we may reasonably infer from the Complaint that Valle's inability to engage in heavy physical exertion would bar him from other jobs besides being a policeman: for example, a person incapable of heavy exertion might not be able to function as a construction worker, a miner, or a longshoreman.[5] The critical question, therefore, is whether jobs requiring heavy physical exertion constitute a sufficiently "broad range of jobs" so that an inability to perform them should be considered a substantial limitation on a person's ability to work.

An example given in the EEOC regulations leads us to believe that 'jobs requiring heavy physical exertion' is a sufficiently broad category. The EEOC suggests that "an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates

---

**5.** It is worth noting that the *Roth, Daley,* and *Knapp* courts did not draw similar inferences even though they could have done so. For instance, the plaintiff in *Roth*, whose visual impairment rendered him susceptible to eye fatigue, *see Roth*, 57 F.3d at 1448–49, might have been prevented from serving as a long-haul truck driver, an airline pilot, or a newspaper copy editor in addition to his inability to serve as a pediatrics resident. Likewise, the plaintiff in *Daley*, who

was found to have "poor judgment" and "poor impulse control," *Daley*, 892 F.2d at 214, might have been *disqualified from any number of jobs* in addition to the New York police. The fact that these courts did not draw such inferences is attributable to their procedural posture: all three cases were decided at the summary judgment stage, when plaintiffs are no longer entitled to inferences unsupported by evidence in the record.

his or her ability to perform a class of jobs." 29 C.F.R. Pt. 1630, App. § 1630.2(j). We cannot see any principled distinction between a person disqualified from "any heavy labor job" and one disqualified from any job requiring "heavy physical exertion," so we conclude that Valle has adequately alleged that he is substantially limited in the major life activity of working.

The Seventh Circuit has applied similar reasoning. In *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908 (7th Cir.1996), the plaintiff was a coal miner who was physically impaired due to a shoulder injury. In considering whether Cochrum's injury substantially limited his ability to work, the court quoted the 'bad back' example from the EEOC regulations, and then observed: "The physical restrictions Cochrum's physician placed on him—no overhead work, heavy lifting, or pulling and pushing out from his body—might apply to a broad range of jobs, and are more than job specific. As with the example of the bad back in the regulations, Cochrum's shoulder injury could disqualify him from any position at the mine, or in related work such as construction." *Id.* at 911.

We observe that *Cochrum*'s reasoning is in tension with cases from other circuits that have concluded that an inability to engage in "heavy lifting" does not substantially limit plaintiffs' capacity to work. *See, e.g., Williams v. Channel Master Satellite Sys.*, 101 F.3d 346, 349 (4th Cir.1996), *cert. denied*, ─── U.S. ───, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997); *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir.1996).[6] These cases seem to assume, without explanation, that only a narrow range of jobs require heavy lifting. This reasoning is difficult to square with the EEOC's 'bad back' example, which plainly states that disqualification from "any heavy labor job" is a substantial limitation on

person's ability to work. An inability to engage in "heavy lifting" would seem to disqualify a person from a similar class of jobs as an inability to engage in "heavy labor." Hence, even were we not bound by the Seventh Circuit's opinion in *Cochrum*, we believe it to be better reasoned than the "heavy lifting" cases.

To summarize: a generous reading of the Complaint indicates that Valle cannot engage in any jobs which require "heavy physical exertion." Because we believe that the number of jobs in this category is sufficiently broad to constitute a substantial limit on Valle's ability to work, we conclude that he has adequately alleged a disability as that term is defined by the ADA.

### D. Qualifications Prong

■ The CPD's second argument is that Valle's Complaint is deficient because it fails to allege that he is qualified for the position he seeks. *See* Def.'s Br. at 8. The ADA defines a "qualified individual with a disability" as a disabled person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir.1996). The EEOC has interpreted "essential functions" to mean "the fundamental job duties of the employment position .... [It] does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). The CPD reasons that because it requires all of its probationary officers to run 1.5 miles within a specified time, this requirement is an "essential function" of the job. *See* Def.'s Br. at 8. Since Valle is, by his own admission, incapable of meeting this threshold requirement, *see* Compl. ¶¶ 8–

---

**6.** Several other courts have affirmed grants of summary judgment against plaintiffs who failed to provide sufficient proof that their lifting limitations would preclude them from engaging in a broad range of jobs. *See, e.g., Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539–40 (9th Cir. 1997); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 617–18 (8th Cir.1997); *McKay v. Toyota Motor Mfg.*, 110 F.3d 369, 373 (6th Cir.1997). These cases reinforce the non-controversial proposition that, at the summary judgment stage,

ADA plaintiffs claiming that they are limited in the major life activity of working must provide some proof that their disability has barred them from a broad range of jobs. Such proof should address the plaintiff's vocational training, the geographical area to which he has access, and the number and type of jobs demanding similar training from which he is disqualified. *See* 29 C.F.R. § 1630.2(j)(3)(ii); *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 943 (10th Cir.1994).

10, the CPD believes his Complaint must be dismissed.

The problem with the CPD's argument is that it conflates two separate qualifications issues: (1) whether Valle can pass the threshold tests administered by the CPD to all of its officer candidates, and (2) whether Valle, if hired as a police officer, would be able to perform the essential functions of the job, with or without accommodations. Threshold requirements are not essential functions: once they are satisfied, they no longer need to be performed by the employee. For example, all attorneys must pass the bar exam in order to practice law, but it does not follow from this that passing the bar exam is an "essential function" of a practicing attorney. Satisfying the prerequisites for obtaining a job is different from doing the job.

 In accordance with this reasoning, claims challenging the propriety of an employer's threshold qualifications tests are not subjected to the same "essential functions" analysis normally used to determine whether a plaintiff is "qualified." Instead, the EEOC has set forth a specific regulation applicable to claims that an employer's threshold qualification tests are discriminatory:

> It is unlawful for a covered entity to use qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, on the basis of disability, unless the standard, test or other selection criteria ... is shown to be job-related for the position in question and is consistent with business necessity.

29 C.F.R. § 1630.10; *see also* 29 C.F.R. Pt. 1630, App. § 1630.10 (stating that "job criteria that even unintentionally screen out ... individuals with disabilities ... may not be used ...."). Valle's Complaint indicates that his disability prevents him from successfully completing the CPD's 1.5 mile running test. *See* Compl. ¶¶ 8, 13. This is sufficient to state a claim under the ADA. The burden thus shifts to the CPD to show that the test is job-related and consistent with business necessity. *See* 29 C.F.R. Pt. 1630, App. § 1630.10 (observing that the purpose of

§ 1630.10 is "to ensure that there is a fit between the job criteria and applicant's ... actual ability to do the job").

In sum, Valle has been disqualified from serving as a police officer because of a threshold requirement imposed by the CPD. Because this requirement is a prerequisite of the position rather than a regular activity of it (at least so far as we can tell from the Complaint), and because it tends to screen out disabled applicants like Valle who cannot engage in heavy physical exertion, the appropriate inquiry is whether the requirement is job-related and consistent with business necessity. Discovery will provide the CPD with the opportunity to satisfy its burden of proving that it is.

### III. Conclusion

For the foregoing reasons, the defendant's motion to dismiss is denied. It is so ordered.