**Roscoe WOOTEN, Plaintiff,**

v.

**ACME STEEL COMPANY, Defendant.**

No. 97 C 0671.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 12, 1997.

Michael Alan Weinberg, Pauline Levy, Novack & Macey, Melinda Higgins Brom, Ernest T. Rossiello & Associates, P.C., Chicago, IL, for Plaintiff.

Roscoe R. Wooten, Riverdale, IL, Pro Se.

Lawrence L. Summers, Valerie Depies Harper, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This case presents a unique dispute under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (1994): does an employer's refusal to reinstate an employee who quit during an alleged episode of depression violate the ADA? Plaintiff Roscoe Wooten brings this issue before the Court, claiming, although in a less than clear manner, that defendant Acme's conduct in denying him reinstatement constitutes two types of discrimination under the ADA: (1) a failure to reasonably accommodate Wooten's disabling depression, and (2) disparate treatment.[1]

---

1. Wooten's complaint clearly asserts a reasonable accommodation claim, but its only allusion to disparate treatment is the statement in two different paragraphs that Acme has reinstated

*See Weigel v. Target Stores,* 122 F.3d 461, 464 (7th Cir.1997). Specifically, Wooten's reasonable accommodation claim alleges that he is entitled to reinstatement as a reasonable accommodation for his depression, and that Acme's refusal to do so discriminated against him because of his disability. His disparate treatment claim alleges that Acme discriminated against him because it previously "disregarded" the resignations of non-disabled employees but refused to do the same for the disabled Wooten.

Acme has moved to dismiss both claims for failure to state a claim upon which relief can be granted. Because Acme's motion attached an affidavit with testimony relating to disparate treatment, we converted Acme's motion to dismiss that claim into a motion for summary judgment and allowed Wooten to conduct expedited discovery, including a deposition of the affiant. *See* Fed.R.Civ.P. 12(b). For the reasons that follow, we grant both motions.[2]

## RELEVANT FACTS [3]

Acme hired Wooten in 1986 as a laborer. His job was to operate a machine that cuts steel strapping used in steel bindings. (Am. Comp.¶ 6.) Wooten was promoted sometime around 1989 to the position of Strapperman, which involved more difficult work with the machinery and commanded a substantially higher wage. (*Id.*) At some point during his tenure with Acme, Wooten began suffering from manic depression. (*Id.* ¶ 7.) Although Wooten's depression interferes substantially with many of his major life activities, Wooten still performed his job well. (*Id.*) He acknowledges, however, that episodes of depression can leave his judgment impaired. (*Id.*)

In May 1995, Wooten told his general foreman, Jim Montgomery, that he was suffering from stress and depression. (*Id.* ¶ 9.) Montgomery directed him to Acme's personnel department for assistance. (*Id.*) Personnel recommended that Wooten see Barbara Francesconi, a certified counselor, for stress and depression counseling and therapy. (*Id.* ¶¶ 9–10.) After meeting with Wooten several times, Francesconi determined that he was suffering from depression, and requested that Acme permit Wooten to attend more counseling and therapy sessions to help him manage his stress. (*Id.* ¶ 11.) Acme consented and arranged for additional counseling. (*Id.*)

Despite receiving treatment, Wooten's battle with depression continued. During one especially severe depressive episode that occurred on Friday evening, October 23, 1995, Wooten called his foreman and verbally resigned. (*Id.* ¶ 12.) The following Monday morning, Wooten asked the foreman to disregard his resignation, explaining that it had been tendered during a fit of severe depression. (*Id.* ¶ 14.) Wooten's foreman referred him to the personnel department. (*Id.*) Wooten immediately called personnel and explained the situation, requesting, again, that Acme ignore his resignation. (*Id.* ¶ 15.) But Acme refused. (*Id.*)

Wooten then sought help from the United Steel Worker's Union ("USWA"), which directed him to see a psychiatrist for a second opinion on his depression. (*Id.* ¶ 16.) Wooten took the advice and went to see psychiatrist Jeffrey Ivanoff. (*Id.*) Dr. Ivanoff agreed with Francesconi's assessment—he diagnosed Wooten with manic depression. (*Id.*) Armed with these two opinions, the USWA asked Acme to reinstate Wooten, contending that he had resigned during a severe depressive episode that had impaired his

non-disabled employees following their resignations. Am.Comp. ¶¶ 17, 20. Nowhere does the complaint use the words "disparate treatment," nor does the pleading contain a separate count based on this type of discrimination, a claim distinct from reasonable accommodation because it involves a different *prima facie* showing *See Weigel,* 122 F.3d at 464; *Valle v. City of Chicago,* 982 F.Supp. 560, 562 (N.D.Ill.1997) This deficiency, however, is not legally fatal because the liberal federal pleading rules require only that a plaintiff allege sufficient facts to outline a particular cause of action. *Ellsworth v. Racine,* 774 F.2d 182, 184 (7th Cir.1985) (citations omitted). A review of the complaint reveals factual allegations that support both claims.

2. Also before us is Wooten's motion to strike a paragraph in an affidavit Acme submitted. We take up this motion later in the opinion.

3. The facts are derived from Wooten's complaint.

judgment. (*Id.*) Later, Barbara Francesconi wrote a letter on Wooten's behalf stating that Wooten had resigned during a severe depressive episode when he was "irrational and . . . his judgment was impaired."[4] (*Id.* ¶ 17; Ex. A.) On November 5, 1995, Acme reiterated its decision not to reinstate Wooten. (*Id.* ¶ 17.)

Wooten filed a charge with the EEOC and, after receiving a Notice of a Right to Sue, filed this ADA action in federal court.[5] (*Id.* ¶ 18.) We now consider whether Wooten's reasonable accommodation claim states a claim for relief, and whether his disparate treatment claim can survive summary judgment.

## LEGAL STANDARDS

### I. Discrimination Claims Under the ADA

The ADA gives rise to two distinct categories of disability discrimination claims. One is a claim alleging discrimination "under the specific terms of the statute," including a failure to reasonably accommodate an employee's known disability. *Hunt–Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1011 (7th Cir.1997). The second is a claim for disparate treatment discrimination, i.e., treating a disabled employee differently (than nondisabled employees) because of his disability. *Sieberns v. Wal–Mart Stores, Inc.*, 125 F.3d 1019, 1021 (7th Cir. 1997). Where the two claims diverge is in the method of proof. Disparate treatment can be shown either with direct evidence or indirectly using the *McDonnell–Douglas* burden shifting approach.[6] *See Sieberns*, 125 F.3d at 1021. But burden-shifting is not an appropriate method of proving a reasonable accommodation claim; its prima facie case simply mirrors the statutory elements. *See Bultemeyer v. Fort Wayne Community Sch.*, 100 F.3d 1281, 1283 (7th Cir.1996). As we indicated earlier, Wooten asserts claims of

both types. We first address his reasonable accommodation claim, the subject of Acme's motion to dismiss.

### II. Motions to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, we must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir.1995); *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir.1995). A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). It will be denied unless it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Nevertheless, the Court need not accept the truth of conclusory legal allegations, *see Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir.1994), and may grant the motion to dismiss if it fails to state a claim for relief, *see Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611 (7th Cir.1989). Using these standards, we address the sufficiency of Wooten's reasonable accommodation claim.

## ANALYSIS

### I. Reasonable Accommodation

■ The ADA's specific terms prohibit "discriminat[ion] against a qualified individual with a disability because of the disability. . . ." 42 U.S.C. § 12112(a). Discrimination is defined, *inter alia*, as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the

---

4. The letter is undated. We have no way of knowing when Francesconi wrote or sent the letter, but it was clearly after Acme terminated her services because she mentions this fact in the letter. Francesconi's termination date is also undisclosed.

5. Wooten initially filed a complaint *pro se* on February 14, 1997. This Court immediately ap-

pointed counsel. Since then, Wooten has substituted his counsel twice. His second attorney filed an amended complaint, which is the subject of this motion, on May 8, 1997. In September, this Court granted her motion to withdraw as counsel of record.

6. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). The following establishes a *prima facie* case under this subsection: "(1) [the employee] is a disabled person within the meaning of the ADA; (2) [the employee] is qualified, that is, with or without reasonable accommodation (which [he] must describe), [he] is able to perform the essential functions of the job; and (3) [the employee] suffered an adverse employment action because of [his] disability." *Garza v. Abbott Labs.*, 940 F.Supp. 1227, 1235 (N.D.Ill.1996) (internal quotations and citations omitted); *Kelleher v. Solopak Pharm., Inc.*, 1997 WL 610779, at *8 (N.D.Ill. Sept.26, 1997). With respect to the third element, the Seventh Circuit interprets the words "because of" to mean that the disability was the sole cause of the adverse employment action. *See Despears v. Milwaukee County*, 63 F.3d 635, 636 (7th Cir.1995) (stating and examining the sole causation element); *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir.1995) (examining the causation element and finding that "but for" causation is not enough under the ADA); *Valle v. City of Chicago*, 982 F.Supp. 560, 562 (N.D.Ill.1997) (stating the causation element).

For purposes of its motion to dismiss the reasonable accommodation claim, Acme does not dispute that Wooten is disabled, or that he is able to perform the essential functions of his job. *Bultemeyer*, at 1284. Acme's attack on the *prima facie* case is twofold: (1) reinstatement after quitting is not, as a matter of law based on Wooten's allegations, a reasonable accommodation, and (2) Wooten's depression was not the sole cause of the "adverse employment action"—characterized by both parties as Wooten's act of resignation.[7] Because we agree with Acme on the first point, we need not address the second.

### A. Reinstatement Is Not a Reasonable Accommodation in This Case

■ At the outset, it is important to clarify what Wooten is asking for as a reasonable accommodation. He is not requesting Acme

to alter his position or working conditions on an ongoing basis to accommodate his depression when he returns to work. Rather, Wooten wants a one-time reinstatement based on his allegations that his resignation was caused by disabling manic depression that he calls "uncontrollable." But this is not a reasonable accommodation as contemplated by the ADA.

The ADA defines "reasonable accommodation" to include:

(a) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(b) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). Because Wooten's disability is mental, not physical, subsection (a) does not apply. Looking to subsection (b), it speaks only in terms of working conditions and adjustments to them during employment; it says nothing about having to accommodate the employee with a change in the employment relationship itself. Although these statutory examples are illustrative, not exhaustive, the authority in this Circuit supports holding that the statute does not contemplate reinstatement after quitting as a reasonable accommodation.

No ADA case in the Seventh Circuit has ever construed "reasonable accommodation" to include reinstatement following an employee's resignation. Indeed, the pertinent decisions indicate just the contrary. In *Stauffer v. Bayer Corp.*, 1997 WL 588890, at *4, *11 (N.D.Ind. July 21, 1997), the court held that an employee who resigned her job right after receiving a bad review and during a period when her adjustment disorder rendered her "out of [her] mind" was not entitled to rein-

---

7. This is not a characterization with which we necessarily agree. We think that the adverse employment action is Acme's failure to reinstate Wooten. After all, that is the action he alleges is

discriminatory. We need not ponder this, however, since we rest our holding on grounds other than causation.

statement as a reasonable accommodation. The court held that asking for her job back was not an "accommodation," but rather a request for a "second chance" at her job, something the ADA does not require an employer to provide. *Id.* at *11. Although *Stauffer* was decided on summary judgment, the court rested its holding on the Seventh Circuit's decision in *Siefken v. Village of Arlington Heights,* 65 F.3d 664, 666–67 (7th Cir.1995), which was decided on a motion to dismiss.

The employee in *Siefken* was a police officer who had been fired for neglecting to monitor his diabetes and driving his squad car erratically when he experienced the resulting diabetic reaction. *Id.* at 666. The court dismissed Siefken's discrimination claim in part because the only accommodation he requested was a second chance at his job, which the court emphasized "is not an accommodation, as envisioned in the ADA."[8] *Id.* Quoting its own precedent, the court explained that " '[i]t is plain enough what accommodation means. The employer must be willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work.' " *Id.* (quoting *Vande Zande v. State of Wis. Dep't of Admin.,* 44 F.3d 538, 543 (7th Cir.1995)). Siefken, however, was not asking his employer "to change anything"; rather, he simply wanted another chance to show he could effectively manage his diabetes, a "controllable" disability. *Id.* at 666–67.

We believe that, given these decisions, Wooten's reasonable accommodation claim cannot stand. It is true that both the *Stauffer* and *Siefken* courts considered significant the fact that the employees' departures were precipitated at least partly by factors other then their disabilities—in *Stauffer,* the bad review, and in *Siefken,* the failure to control a "controllable disability"—whereas Wooten alleges that his job performance was never in question and that his resignation was driven solely by his uncontrollable depression. But that does not alter the fundamental principle

driving these decisions: that the ADA's reasonable accommodation provisions refer to changes in "ordinary work rules, facilities, terms, and working conditions," not altering the employment relationship itself.

It is clear that Wooten is not asking for a change in working conditions or facilities; instead, he characterizes his request for reinstatement as a one-time accommodation to his disabling depression. But this underscores our determination that reinstatement in this case is not an accommodation. If, as Wooten argues, his depression is uncontrollable, and can impair his judgment to the point where he involuntarily resigns, then simply reinstating him on this occasion does nothing to accommodate his ongoing, uncontrollable disability. Wooten does not point to any accommodation that would assist in managing his depression once he returns to work. *See Vande Zande,* 44 F.3d at 542 (accommodation means "some change that will enable the disabled person to work."). The only accommodation that the complaint can fairly be read to request consistent with Wooten's allegations about his uncontrollable depression is reinstating him whenever he resigns during a depressive episode. We cannot conclude that the ADA requires such extreme measures. *See Palmer v. Circuit Court of Cook Cty., Social Serv. Dep't,* 905 F.Supp. 499, 510 (N.D.Ill.1995) ("The ADA does not require unreasonable accommodation."). Furthermore, Wooten would have no ADA claim under these circumstances because he would not meet the second element of a *prima facie* case, an ability to perform the essential functions of his job, because Acme could not depend on him to remain employed.

Viewing all facts and resolving all doubts in Wooten's favor, we conclude that he cannot state a reasonable accommodation claim under the ADA. The claim's deficiency is established by his own allegations. *See Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992) (courts need not ignore facts in the complaint that undermine the plaintiff's claim).

---

8. The court also determined that Siefken was not terminated "because of" his disability. *Id.* at 666. Although diabetes was a factor contributing to the "incident leading to his termination," the court held that "the more immediate cause" was Siefken's "failure to monitor his condition." *Id.*

## B. Acme Met Its Duty to Engage in the Interactive Process

Before moving on to disparate treatment, we want to distinguish a case on which Wooten relies heavily in support of his reasonable accommodation claim, *Bultemeyer v. Fort Wayne Community Sch.*, 100 F.3d 1281 (7th Cir.1996). The plaintiff in *Bultemeyer* worked as a custodian for Fort Wayne Community Schools, and developed some serious mental illnesses, including schizophrenia, during his tenure. *Id.* at 1282. To accommodate his disability, Bultmeyer's employer limited his custodial duties to less populated areas of the school. *Id.* When, following a series of disability leaves, he was ready to go back to work, Bultmeyer was told that the only open position was at a different school, where he would no longer receive any special accommodations. *Id.* He received a letter instructing him to report to work on a specified day or else he would be terminated. *Id.* Bultmeyer toured the new school, and told his supervisor that he did not think he would be able to perform his job there, but emphasized that he was not resigning. *Id.* He did not show up for work on his designated start date. *Id.*

One week later, he was fired. *Id.* Bultmeyer's psychiatrist had written a letter on his behalf stating that, based on his mental condition, it would be in Bultmeyer's best interests to work at another school in a less stressful environment. *Id.* Bultmeyer delivered the letter a few hours after he was terminated, but never received a response. *Id.* He later filed suit, alleging that his employer had violated the ADA by failing to make reasonable accommodations for his mental disability. *Id.* His claim hinged on the fact that the employer knew about his disability and what accommodations he required—confirmed by his psychiatrist's letter asking for a less stressful position—but made no effort to accommodate him. *Id.* The court reversed the district court's grant of summary judgment, holding that a jury could find that the employer was to blame for failing to accommodate Bultmeyer because it caused a "breakdown in the interactive process." *Id.* at 1286.

The court emphasized that "[a]n employee's request for reasonable accommodation requires a great deal of communication between the employee and employer." *Id.* at 1285. The employer has a duty to "meet the employee half-way" in determining what is an appropriate accommodation—a duty that is heightened "[i]n a case involving an employee with a mental illness," where "the communication process becomes more difficult." *Id.* at 1285 (citations omitted). An employer's failure to engage properly in the interactive process leads to liability under the ADA:

> "[C]ourts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility."

*Id.* (quoting *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir.1996)).

Although the employer blamed Bultemeyer for the breakdown in the interactive process because he did not specifically request an accommodation, the court found that a jury could lay blame on the employer. First, Bultemeyer may have thought it would have been futile to ask for such an accommodation after the threat that he show up or be fired. *Id.* Second, he did request an accommodation—by having his psychiatrist write a letter requesting placement in a "less stressful" job. *Id.* Rather than considering the psychiatrist's request, the employer simply ignored it and instead "unilaterally determined that Bultmeyer was wrong in thinking that the position at [the new school] was more stressful than any other position." *Id.* at 1284. Even though the letter followed Bultemeyer's termination by a few hours, this was enough time for the employer to reconsider its decision based on the letter and discuss the situation with Bultemeyer and his doctor. At the very least, the employer could have asked Bultemeyer or his doctor what he

needed in order to function on the job. *Id.* at 1286.

Wooten unsuccessfully attempts to analogize his case to *Bultemeyer.* He likens Bultemeyer's decision not to begin the new job to his own decision to resign, claiming both were the product of mental disease; Wooten claims it follows that the employer's decision to fire Bultemeyer is analogous to Acme's act of accepting Wooten's resignation. But Wooten's analogy is inappropriate because he confuses reasonable accommodation with adverse employment action. The reasonable accommodation that Bultemeyer sought was not reinstatement following termination; rather, he wanted a less stressful working environment once he returned. The *Bultemeyer* court's analysis of the interactive process applies only to this request to change working conditions on the job. Here, by contrast, Wooten never requested a reasonable accommodation in his employment conditions, either before or after his termination.

While accommodating Bultemeyer on the job would necessarily have involved rescinding his termination, the Seventh Circuit was concerned primarily with what steps the employer could have taken to enable Bultemeyer to work instead of firing him. Bultemeyer's employer knew not only about his disability, but also what accommodations would permit him to work. Bultemeyer and his psychiatrist told his employer before he was fired that he could not function at the new job without them. Instead of continuing to provide accommodations, the employer simply revoked them and ordered Bultemeyer to show up for work anyway, firing him without ever discussing his needs. This case stands in stark contrast. As soon as Bultemeyer told Acme about his depression, Acme began the interactive process by referring him to counseling. When therapist Francesconi asked for more sessions, Acme authorized them. It was Wooten who cut off the interactive process by quitting without ever having hinted that he needed an accommodation, besides counseling, in order to continue functioning at work. It was not up to Acme to guess what would have prevented Wooten from quitting. *See Bultem-*

*eyer,* 100 F.3d at 1286 ("[R]equesting a reasonable accommodation is the employee's responsibility."); *Kelleher v. Solopak Pharm., Inc.,* 1997 WL 610779, at *10 (N.D.Ill. Sept.26, 1997) ("The employer's responsibility to participate in this [interactive] process does not arise, however, until the employee requests an accommodation.").

Finally, Wooten tries to draw similarities between the letter from Bultemeyer's psychiatrist on the one hand, and the letter from Francesconi and Dr. Ivanoff's diagnosis of manic depression on the other. This analogy fails as well. The psychiatrist's letter in *Bultemeyer* contains a key distinction—it requests a reasonable accommodation in the form of a less stressful job. Francesconi and Dr. Ivanoff, however, simply point out that Wooten is suffering from a mental illness that impairs his judgment, but suggest no solutions for accommodating it. They ask only that Wooten receive his job back—a request that we have held is not one for a reasonable accommodation.[9]

Therefore, even viewing the allegations most favorably to Wooten, the facts do not permit inferring that the blame for curtailing the interactive process lays with Acme. Acme engaged in the interactive process in good faith and made efforts to accommodate Wooten's depression by sending him to counseling. *See Gordon v. Runyon,* 1994 WL 139411, at *5 (E.D.Penn. Apr. 21, 1994) (employer's attempt to accommodate employee by referring him to Employee Assistance Program satisfied employer's duty). Given Wooten's satisfactory performance and failure even to hint that he needed some changes in order to continue working, Acme cannot be held to have violated the ADA by deciding to accept Wooten's sudden resignation.

**II. Disparate Treatment**

Wooten's second discrimination claim asserts disparate treatment—that he was treated less favorably than nondisabled employees at Acme. Specifically, Wooten claims that nondisabled employees were permitted to revoke their resignations while he, a disabled

---

9. Moreover, we cannot tell when or if Acme ever received Francesconi's letter.

employee, was not. He alleges that this difference in treatment stems from a discriminatory animus against persons with depression. We analyze this claim for disparate treatment under the familiar standards for summary judgment.

### A. Summary Judgment Standards

Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of establishing that there is no genuine issue of material fact. If the moving party makes this showing, the opposing party must go beyond the pleadings and set forth specific facts in affidavits or otherwise show that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–26, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). In other words, the opposing party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment and may not rest upon allegations or denials of the pleading." *Valentine v. Joliet Township High Sch. Dist.*, 802 F.2d 981, 986 (7th Cir. 1986) (internal quotations and citations omitted).

The court must view all evidence in the light most favorable to the party opposing the motion and draw all inferences in favor of that party. *NLFC, Inc. v. Devcom Mid–America, Inc.*, 45 F.3d 231, 234 (7th Cir.), *cert. denied*, 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). "[B]ecause this is an employment case, highly dependent on issues of fact and intent and the credibility of witnesses, we must apply these standards with

added rigor." *Bultemeyer*, 100 F.3d at 1283.[10]

### B. Standard of Proof Applied to Disparate Treatment Claims

Disparate treatment discrimination may be proven either directly or indirectly. *Sieberns v. Wal–Mart Stores, Inc.*, 125 F.3d 1019, 1021 (7th Cir.1997). Direct evidence of discrimination is evidence without the need for inference or presumption. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994). Wooten has produced no direct evidence of discrimination. Instead, he alleges that Acme refused to reinstate him, but reinstated nondisabled employees who resigned in the past; we are to infer from Wooten's contrasting treatment an intent to discriminate against depressed persons. To prove this, Wooten cannot simply rest on his allegations. He must produce evidence that satisfies the *McDonnell–Douglas* burden-shifting test. *Bultemeyer*, 100 F.3d at 1283; *DeLuca v. Winer Ind., Inc.*, 53 F.3d 793, 797 (7th Cir.1995).

Under this test, "it falls to the plaintiff to first establish a *prima facie* case of discrimination. If she succeeds in doing so, the defendant must then articulate a legitimate, non-discriminatory reason for discharging her. At that juncture, the plaintiff must then establish that this proffered reason is really a pretext for discrimination." *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 792 (7th Cir.1997); *see also DeLuca*, 53 F.3d at 797. The plaintiff may prove pretext for discriminatory action either with evidence that the employer was more likely than not motivated by a discriminatory reason, or by showing that the employer's explanation for the action is not credible. *DeLuca*, 53 F.3d at 797. Although the burden of production shifts under this test, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plain-

---

**10.** Wooten points out in his brief that Acme did not support its converted motion for summary judgment with a statement of material undisputed facts pursuant to Local General Rule 12M. Normally, failure to submit a 12M statement is grounds for denying a summary judgment motion. *See Prymer v. Stovall*, 1996 WL 663919, at

*1 (N.D.Ill. Nov.4, 1996). However, given that Acme filed its motion as a motion to dismiss and that we converted it into a summary judgment motion, and that we never ordered Acme to submit a 12M statement, we find that Acme had a good faith basis for failing to comply with Local Rule 12M.

tiff." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (citations and internal quotations omitted).

"A cautionary word is in order as to what kind of evidence the plaintiff must produce in order to establish a prima facie case." *Leffel,* 113 F.3d at 792. " '[T]he prima facie case requires evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion....' " *Id.* (quoting *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 311, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996)). "[T]he nature of the proof giving rise to the requisite inference of discrimination cannot be reduced to a formula that will serve any and all discrimination cases." *Leffel,* 113 F.3d at 793.

### C. Wooten Has No Proof Permitting an Inference of Discrimination

█ Wooten's complaint makes the very specific allegation that Acme has reinstated other, nondisabled employees after resignation, and argues from this that Acme's refusal to do the same for Wooten was motivated by a bias against depressed persons. This claim fails on summary judgment because Wooten provides no factual basis for this assertion. He points to nothing—either in the form of testimony or documents—showing that Acme has ever reinstated an employee who quit, disabled or not. Mere conclusory assertions without factual support are not enough create a genuine issue of material fact. *Koelsch v. Beltone Electronics Corp.,* 46 F.3d 705, 708 (7th Cir.1995); *Palmer,* 905 F.Supp. at 504–05. Absent any proof that Wooten was treated differently than any other employee, he cannot make a *prima facie* case for disparate treatment. *See DeLuca,* 53 F.3d at 798 (reasoning that the plaintiff failed his *prima facie* burden on disparate treatment because he relied on the allegations in his complaint instead of presenting evidence that he was treated differently than non-disabled employees).

Even if we were to assume that Wooten met his initial burden, summary judgment is in order because Wooten cannot show that Acme's nondiscriminatory reason for refusing to reinstate him is a pretext. Joseph P. Dula, Acme's Director of Human of Resources, testified in his deposition that the labor agreement between Acme and the USWA (Wooten's union) prohibits reinstating employees who resign. (Dula Dep. at 116.) Dula based his testimony on his experience as Director of Human Resources for the Acme Riverdale Plant (where Wooten worked) since February of 1995, and his involvement with the plant's labor relations in a managerial capacity for fifteen years before that. (*Id.* at 36, 58–59.) Since 1980, Dula has been responsible for handling all aspects of the labor agreement, including requests for reinstatement. (*Id.* at 67, 125–26.) In the history of Dula's employment, he was aware of only two, both of which were denied. (*Id.* at 15.) This evidence directly contradicts Wooten's allegation that Acme has reinstated non-disabled employees, and is not rebutted by any proof from Wooten.

█ Wooten resorts instead to attacking the admissibility of Dula's deposition testimony. He claims that Dula's testimony about how Acme handles requests for reinstatement is not based on personal knowledge, contains hearsay, and lacks proper foundation.[11] All three charges rest on Wooten's contention that Dula's knowledge base is inadequate because he did not review any documents before testifying and because his testimony is dependent on the memory of three coworkers. But Dula was not required to conduct any sort of investigation into Acme's business records before testifying; the Federal Rules of Evidence do not mandate that witnesses base their testimony on documents, nor do the Rules express a preference for documentary evidence over witness testimony from memory. Moreover, Dula's testimony about employee reinstatement was drawn from his personal knowledge as a manager in charge of responding to reinstatement requests at Acme's Riverdale plant. (Dep. at 36, 58–59, 67, 125–26.) Setting out the

---

11. Wooten makes an identical argument in a motion to strike paragraph three of Dula's affidavit, which Acme attached to its motion. In light of the fact that we reject these attacks on Dula's deposition testimony, we deny the motion to strike paragraph three of his affidavit.

breadth of this personal knowledge and experience established the requisite foundation. Finally, Dula did not rely on hearsay. While Dula testified that three of his co-workers told him that they were likewise unaware of any employees reinstated after quitting, Dula based his testimony about Acme's refusal to disregard resignations upon his own knowledge gleaned from dealing with the plant's labor relations. (Dep. at 27–28.)

Because Acme articulated a non-discriminatory reason for refusing to disregard Wooten's resignation, the burden shifts to Wooten to "move beyond the pleadings and ... set forth specific facts from which it might reasonably be inferred" that invoking this policy in Wooten's case was merely a pretext for discrimination. *Jenkins v. Heintz*, 124 F.3d 824, 831 (7th Cir.1997); *see also Becker v. Tenenbaum–Hill Assocs.*, 914 F.2d 107, 110 (7th Cir.1990). However, Wooten sets forth no such facts, specific or otherwise. Instead he decries the sufficiency and admissibility of Acme's proof. Wooten is forgetting here that Acme is the defendant, who has no duty to investigate or even present evidence in support of its motion for summary judgment. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553 ("[W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim."). It is Wooten who bears the burden of proof on a disparate treatment claim, a burden he makes no effort to meet.

Because Wooten has failed to raise any genuine issue of material fact permitting a jury to rule in his favor on disparate treatment, we enter summary judgment in Acme's favor.

### CONCLUSION

In sum, Wooten's allegations cannot state a reasonable accommodation claim because reinstatement is not, as a matter of law, a reasonable accommodation for his disability. Further, Wooten presents no facts to support a jury verdict on his disparate treatment claim. The circumstances surrounding Wooten's resignation are unfortunate, but do not violate federal law. A reasonable jury therefore could not return a verdict in his favor.

Wooten's complaint is dismissed with prejudice, and Acme's motion for summary judgment is granted. Wooten's motion to strike paragraph three of Dula's affidavit is denied. The Clerk of the Court is directed to enter judgment for Acme pursuant to Fed.R.Civ.P. 58.