Katherine L. TAYLOR, Plaintiff,

v.

**PHOENIXVILLE SCHOOL DISTRICT, Defendant.**

Civil Action No. 96–8470.

United States District Court,
E.D. Pennsylvania.

March 20, 1998.

Joseph A. Ryan, Ryan, Wochok & Ryan, Ltd., Paoli, PA, for Plaintiff.

Michael I. Levin, Michael W. Jones, Michael I. Levin & Assoc., P.C., Huntingdon Valley, PA, for Defendant.

## MEMORANDUM

JOYNER, District Judge.

Plaintiff, Katherine L. Taylor ("plaintiff" or "Taylor") commenced this action against defendant, Phoenixville School District ("defendant" or the "school district") on December 19, 1996. Plaintiff's complaint alleges that she was terminated in violation of Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12101, *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.* Plaintiff seeks injunctive relief, monetary compensation as well as other affirmative relief, punitive damages, and attorney's fees and costs.

Presently before the Court is Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 on all counts of Plaintiff's Complaint. For the following reasons, the Motion is granted.

## BACKGROUND

Plaintiff was employed by defendant in September of 1974 as the principal's secretary for the East Pikeland Elementary School ("East Pikeland") and was terminated on October 28, 1994. Plaintiff worked for five different principals throughout her twenty (20) years of employment with defendant and never received any disciplinary notices or had any disciplinary problems until her last year.

In August 1993, Christine Menzel ("Menzel") was assigned to the principal position at East Pikeland. Plaintiff and Menzel worked together for approximately one week before plaintiff became ill. Plaintiff's illness began with a rather sudden change of behavior over a three week period and culminated in an "episode" of bipolar disorder at the school office. Due to this illness, plaintiff took a leave of absence beginning on August 30, 1993.

Plaintiff was admitted to the Coastal Plains Hospital and Counseling Center ("Coastal Plains") in North Carolina on August 31, 1993, where she was diagnosed with and treated for [1] a bipolar disorder. Plaintiff remained in Coastal Plains until September 20, 1993, when, as plaintiff was much improved, she was discharged to the care of Louise Sonnenberg, M.D. ("Dr. Sonnenberg"), a psychiatrist who practices in Phoenixville, Pennsylvania. Plaintiff continues to treat with Dr. Sonnenberg for psychotherapy and continues to take Lithium.

On October 13, 1993, Dr. Sonnenberg wrote a note to Linda Ferrara ("Ferrara"), Administrative Assistant for Personnel and Staff Development for the Phoenixville Area School District, verifying that plaintiff was able to return to work on October 15, 1993. Plaintiff was only authorized to work for half-days during the first week but was authorized to return to full time duty, without limitation, on or about October 25, 1993.

While plaintiff was away from East Pikeland, the new principal, Menzel, made changes to the office practices and procedures that were designed to bring the school up to the current standards of the school district. For instance, Menzel started utilizing a computer database for keeping track of student records instead of the outdated index card box that plaintiff had previously used. The methods and techniques which Menzel wanted plaintiff to utilize made it more difficult for plaintiff to successfully proceed in her job after she returned from leave. Further, Menzel updated plaintiff's job description, with the help of plaintiff, to include an increased number of tasks.

Menzel was immediately dissatisfied with plaintiff's performance and was instructed by Ferrara to document her concerns. In accordance with this advice, Menzel prepared and presented plaintiff with a series of memoranda documenting Menzel's concerns and evaluating plaintiff's performance and efforts at correcting performance problems. Plaintiff received a total of nine (9) memoranda between November 9, 1993 and October 27, 1994.[2] These memoranda reflected in detail

---

1. Plaintiff was treated with the prescription drugs Navane and Lithium Carbonate and psychotherapy.

2. Plaintiff received memoranda dated: 11/9/93, 11/23/93, 12/9/93, 1/6/94, 2/1/94, 3/11/94, 4/22/94, 9/2/94, and 10/27/94.

and by date errors, mistakes and/or omissions allegedly made by Taylor in performing her job duties.[3] Subsequent to plaintiff receiving a memorandum, plaintiff, Menzel, Ferrara, and a representative from plaintiff's union would meet to discuss the allegations in the memorandum. At these meetings, plaintiff disputed that she made some of the errors outlined in Menzel's memoranda and attempted to explain others.

During this time frame, communications and relations between Menzel and plaintiff continued to deteriorate. Plaintiff alleges that the high level of scrutiny and the strained communications between her and Menzel caused her to suffer from increased anxiety and stress, which allegedly led to a loss of self-esteem and to plaintiff's inability to sleep, eat, or otherwise enjoy life. Notwithstanding the stress from which plaintiff was allegedly suffering, Dr. Sonnenberg sent another note to the school district on 1/5/94 stating that plaintiff was able to return to work and was not disabled.[4] Moreover, plaintiff did not notify the school district that she was having difficulty performing her functions due to the alleged increased stress or request accommodations that would enable her to perform her functions more effectively.

On June 29, 1994, Menzel prepared a Secretarial Staff Performance Evaluation of plaintiff's work performance for the 93–94 school year. Plaintiff received an overall rating of "unsatisfactory" on this evaluation.

On September 8, 1994, plaintiff received a letter from Ferrara which placed plaintiff on a thirty (30) day probationary period. The September 8th letter also indicated that disciplinary action, including dismissal, may result if plaintiff's performance did not improve. Finally, on October 27, 1994, a meeting was held to evaluate plaintiff's performance during the probationary period.[5] On October 28, 1994, plaintiff received a letter from Ferrara indicating that due to plaintiff's failure to perform satisfactorily during the probationary period, the letter served as notice of her discharge effective at the close of school, Friday, October 28, 1994.

■ Following the discharge, plaintiff's union representatives negotiated with the school district to allow plaintiff to "retire" in substitution for her discharge so that plaintiff could receive retirement benefits.[6] Plaintiff also filed for and was denied social security disability subsequent to her "retirement." Thereafter, plaintiff filed for unemployment compensation on February 23, 1995, representing that she was available and able to work. Based upon this representation, plaintiff received unemployment compensation.

Plaintiff then brought this action.

## I. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together

3. The memoranda evaluated plaintiff's work under general categories where Menzel would list errors or omissions plaintiff made. For example, on one occasion plaintiff gave a Girl Scout troop permission to rake leaves on school property without having authority to give such permission. Menzel also listed things such as plaintiff's failure to deliver messages on time or to the proper person or typos in her work.

In addition to the memoranda, Menzel documented plaintiff's performance by placing in plaintiff's file documents plaintiff typed that contained typos, letters which were returned to the school due to an insufficient address, e-mail messages regarding plaintiff, and photos Menzel took of plaintiff's desk, trash can, recycle bin, and the school refrigerator.

4. From the facts presented to this Court, it is unclear what prompted Dr. Sonnenberg to send the 1/5/94 letter.

5. The school district extended the length of plaintiff's probationary period to account for days plaintiff was on vacation.

6. Defendant has asked this Court to apply the judicial estoppel doctrine of McNemar v. The Disney Store, Inc., 91 F.3d 610 (3d Cir.1996) to prevent plaintiff from claiming she was "terminated" in these proceedings since she "retired." However, this Court declines to do so as the facts surrounding plaintiff's "retirement" do not show an intent by plaintiff to play "fast and loose" with the Court as required by McNemar. Id. (court found judicial estoppel applicable to plaintiff claiming to be otherwise qualified where plaintiff previously made a representation of being totally disabled; court required a finding of an inherent contradiction and an intent to play fast and loose to apply judicial estoppel).

with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989)(citing *Anderson*, 477 U.S. at 249). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. ADA Claim

Although the parties have made it less than clear, it appears that plaintiff has alleged discrimination under the ADA claiming both failure to accommodate and disparate treatment. The distinction between the claims lies in the method of proof. *See Walton v. Mental Health Association of Southeastern Pennsylvania*, 1997 WL 717053, *3 (E.D.Pa.); *Wooten v. Acme Steel Co.*, 986 F.Supp. 524, 1997 WL 790408, *2 (N.D.Ill.). In disparate treatment claims, once a *prima facie* case has been established, the, now familiar, burden-shifting paradigm of *McDonnell Douglas* applies. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207

(1980); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 619 (3d Cir.1996); *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 68 (3d Cir.1996); *Walton*, 1997 WL 717053 at *10.

### A. Failure to Accommodate

■ We will first address plaintiff's failure to accommodate claim. To establish a *prima facie* case of discrimination for failure to accommodate under the ADA,[7] a plaintiff must demonstrate that: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir.1998); *Sarko v. Penn–Del Directory*, 968 F.Supp. 1026, 1034 (E.D.Pa.1997). Defendant moves for Summary Judgment claiming that plaintiff has not presented a *prima facie* case because she is not "disabled" within the meaning of the ADA and because she is not "otherwise qualified to perform the essential functions" of her job. We will analyze each of the two elements separately as follows.

### 1. Is Plaintiff Disabled Within the Meaning of the ADA?

Under the ADA, a person has a disability if she has "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) [is] regarded as having such an impairment." 42 U.S.C.A. § 12102(2). Plaintiff bases her claim of disability on the first and third prongs of the definition. We address each in turn.

### a. Substantial Limitation of Major Life Activity

We first note that it is undisputed that plaintiff has been diagnosed with a bipolar

---

**7.** PHRA claims are analyzed in the same manner as ADA claims. Therefore, we will not address the PHRA separately. *See Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir.1996); *Nave v. Wooldridge Construction of Pennsylvania, Inc.*, 1997 WL 379174, n. 4 (E.D.Pa.).

disorder[8] and that such a disorder can qualify as a mental impairment under the ADA. *See Gaul v. AT & T, Inc.,* 955 F.Supp. 346, 350 (D.N.J.1997) *affm'd Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576 (3d Cir.1998); *Sarko,* 968 F.Supp. 1026, 1034–35; *Adams v. Rochester,* 977 F.Supp. 226, 232 (W.D.N.Y. 1997). However, in order to be considered a "disability" the impairment must "substantially limit" one or more of plaintiff's "major life activities." 42 U.S.C.A. § 12102(2)(A). Although these terms are not defined in the statute, the regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). For an impairment to substantially limit major life activities, the impairment must be a "'significant' restriction" on the major life activity.[9] *Nave v. Wooldridge Construction of Pennsylvania, Inc.,* 1997 WL 379174, *4 (E.D.Pa.) (citations omitted); *see Kelly v. Drexel University,* 94 F.3d 102, 107 (3d Cir. 1996).

Further, the limitation must exist at the time the adverse employment decision is made. *See Adams v. Rochester General Hospital,* 977 F.Supp. 226, 232 (W.D.N.Y. 1997); *see generally Gaul,* 134 F.3d at 580. Temporary disabilities or non-chronic impairments of short duration, therefore, are not generally considered disabilities under the ADA. *Nave,* 1997 WL 379174 at *4. Finally, in making the determination of whether one is disabled, mitigating factors, such as medication, are not considered. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(h); *see also Kelly,* 94 F.3d at 106 (recognizing the regulation); *Wilson v. Pennsylvania State Police Dept.,* 964 F.Supp. 898, 902–07 (E.D.Pa.1997);

*Geuss v. Pfizer, Inc.,* 971 F.Supp. 164, 169 (E.D.Pa.1996); *Miles v. General Services Administration,* 1995 WL 766013, *4–5 (E.D.Pa.).

■ Plaintiff claims her mental impairment substantially limits her ability to learn, think, concentrate, interact with others, care for herself, speak, perform manual tasks, and work.[10] (Pl.'s Mem. at 20). Plaintiff, however, has not presented any evidence showing that she is substantially limited in her ability to interact with others, care for herself, speak, or perform any manual tasks. Accordingly, here, we limit our analysis to whether plaintiff has presented sufficient evidence to show that she was substantially limited in the ability to learn, think, or concentrate on the date of her termination.

The crux of plaintiff's argument is that she still suffers from the bipolar disorder that was diagnosed at Coastal Plains in September of 1993, but that the impairment is currently, and was at the time of her termination on October 28, 1994, controlled with medication.[11] Plaintiff argues that the fact that she is taking medication should not be considered and that without the medication she would be substantially limited in the ability to learn, think, and concentrate. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(h); *see also Kelly,* 94 F.3d at 106.

A mental condition such as plaintiff's qualifies as a disability under the ADA provided there is evidence that the mental impairment, when left untreated, substantially limits a major life activity. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(h). However, plaintiff fails to present sufficient evidence that her mental impairment would have substantially limited her ability to learn, think, and con-

---

**8.** Bipolar disorder is a form of depression that used to be called manic depression. *See* (Rieger Report at 11).

**9.** A substantial limitation "exists if plaintiff is 'unable to perform a major life activity that the average person in the general population can perform ... or ... [is] significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to' the average person." *29 C.F.R. § 1630.2(j)(1).*

**10.** We will address plaintiff's claim that her mental impairment substantially limited her ability to perform the major life activity of work secondly as the regulations provide that "[i]f an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working." 29 C.F.R. pt. 1630 App. § 1630.2(j). *See Nave,* 1997 WL 379174, at n. 10.

**11.** Plaintiff, still takes and has consistently taken lithium since she was released from Coastal Plains.

centrate if she had not been taking her medication at the time of her termination.

Plaintiff argues that the Coastal Plains Admissions report shows that she is substantially limited in her ability to think and concentrate without medication because she would "obviously" still have been suffering from the exact symptoms on the date of her termination if not for the medication prescribed.[12] However, the report from Coastal Plains does not indicate that plaintiff would continue to be substantially limited in her ability to think or concentrate with or without medication. It also does not indicate that, as of the time of plaintiff's termination in October of 1994, over a year later, she was substantially limited in the ability to learn, think, or concentrate either with or without her medication. *See Id.* Therefore, at most, this report only provides evidence that plaintiff suffered a temporary mental disability that substantially limited her ability to think, learn, or concentrate in September of 1993.

The Coastal Plains report is similar to the insufficient evidence presented in *Nave v. Wooldridge,* where the court found that, although plaintiff suffered from major depression, he had been successfully treated with medication and counseling. 1997 WL 379174, *4 (E.D.Pa.). Based on this evidence, the court found plaintiff's mental impairment to be "of a temporary nature" which did "not qualify as a disability." *Id.*

Similarly, the report from Wolfram Rieger, M.D., defendant's expert, on which plaintiff relies, is also insufficient to indicate that, *on the date of plaintiff's termination,* she was substantially impaired in her ability learn,

think, or concentrate without medication. *See Adams,* 977 F.Supp. at 232 (disability must be present at time adverse employment decision is made); *see generally Gaul,* 134 F.3d at 580 (determination of whether an individual with a disability is qualified is made at time of employment decision). Dr. Rieger's report indicates that plaintiff's past history was consistent with a diagnosis of bipolar disorder[13] and that if plaintiff failed to take her medication properly as prescribed, on the date of Dr. Rieger's examination—three years after plaintiff's termination, she "might relapse into psychosis and then might become disabled." Plaintiff can not rely on Dr. Rieger's report because it does not present sufficient evidence that plaintiff suffered from a possible limitation on the date of her termination.

Finally, plaintiff does not purport to rely on her own treating psychiatrist, Dr. Sonnenberg, nor can she. *See Gaul,* 955 F.Supp. at 349 (finding that testimony of the treating physician is sufficient without separate "expert" testimony). Dr. Sonnenberg does not state that plaintiff was substantially limited in her ability to learn, think, or concentrate when she was terminated nor does Dr. Sonnenberg explain what, if any, substantial limitations plaintiff would suffer without the medication.[14] *See Nave,* 1997 WL 379174 at *4 (reasonable jury could not find plaintiff disabled where "plaintiff's own medical expert ... does not state that plaintiff has any mental problem that substantially limits his thought processes or thinking activities.").[15]

The mere fact that plaintiff was taking medication at the time of her firing in October 1994, does not show, in the absence of

---

**12.** The admission report from Coastal Plains indicates that on August 31, 1993, plaintiff had "pressure to her speech and flight of ideas. She had delusional ideas of grandiose qualities.... She was elated and her mood was euphoric." (Pl.'s Mem. at Ex. 6).

**13.** It is not disputed that plaintiff was diagnosed with a bipolar disorder.

**14.** Dr. Sonnenberg wrote a note to the school district on 10/15/93 allowing plaintiff to return to work without indicating any limitations suffered by plaintiff, wrote another note on 1/5/94 stating that plaintiff was not disabled, and on 4/8/97 wrote a letter outlining plaintiff's treatment

which does not state that plaintiff would have been substantially limited in her ability to learn or think a the time of termination without the aid of medication.

**15.** *See generally Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 165 (5th Cir. 1996)("[w]hen dealing with the amorphous world of mental disabilities, we conclude that health-care providers are best positioned to diagnose an employees disabilities, limitations, and possible accommodations.") Dr. Sonnenberg's 11/9/94 note stating that plaintiff is "temporarily disabled" is irrelevant here as it was written after plaintiff was terminated. *See Adams,* 977 F.Supp. at 232.

any further evidence, that she was "obviously" unable to learn, think, or concentrate without the medication. This is plaintiff's own conclusion that is not documented by a single medical report, not even by her own treating physician. Plaintiff fails to recognize the crucial need for her to support this key element of her claim with evidence. *See Adams*, 977 F.Supp. at 232 (plaintiff failed to show disability where he failed to provide any medical reports, opinions or documents to confirm his ability to work or function was substantially limited by his depression). The Court can not allow plaintiff's claim to go forward on mere conjecture and speculation. *See* Fed.R.Civ.P. 56; *Motorola, Inc. v. Electronic Laboratory Supply Company, Inc.*, 1991 WL 4416 at *5.

Having concluded that plaintiff has not presented sufficient evidence to demonstrate that she suffered from a substantial limitation that affected her ability to learn, think, or concentrate more so than the average person, the Court must next determine whether plaintiff has presented sufficient evidence from which a reasonable jury could determine that plaintiff's mental impairment substantially limited her ability to work.[16] Here, the proper inquiry is whether the individual is impeded in the ability "to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). To make out such a claim, a plaintiff must present demographic evidence to show from what jobs in her geographic area plaintiff has been excluded due to her disability.[17] *See* 29 C.F.R. Pt. 1630 App., § 1630.2(j); *see also*

*Soileau v. Guilford of Maine, Inc.*, 928 F.Supp. 37, 50 (D.Me.1996), *affm'd* 105 F.3d 12 (1st Cir.1997). "A plaintiff's failure to do so is fatal at summary judgment." *Soileau*, 928 F.Supp. at 50; *see also Nave*, 1997 WL 379174 at *7 ("plaintiff must make this minimum showing to create an issue of fact to prevent summary judgment").

Plaintiff has failed to meet her burden as she has not presented any evidence that her mental impairment restricted her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities at the time of her termination. *See* 29 C.F.R. § 1630.2(j)(3)(i); *see also Nave*, 1997 WL 379174 at *5. Nor has plaintiff presented any evidence of general employment demographics and/or recognized occupational classifications that indicate the approximate number of jobs from which plaintiff would be excluded due to her impairment. *See* 29 C.F.R. Pt. 1630 App., § 1630.2(j); *see also Gaul*, 955 F.Supp. at 351; *Panzullo v. Modell's Pa., Inc.*, 968 F.Supp. 1022, 1025 (E.D.Pa.1997)(finding plaintiff not substantially limited in ability to work where plaintiff failed to proffer evidence showing that he is excluded from "a class of jobs," or "a broad range of jobs in various classes" within the geographical area).

As plaintiff has not presented sufficient evidence to support her claim that she is substantially limited in the major life activity of working or of learning, thinking and concentrating, she has not made a *prima facie* showing that she is disabled to satisfy prong one of the ADA definition of disability. We now turn our attention to prong three of the definition of disabled under the ADA: wheth-

---

**16.** The regulations provide that "[i]f an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered." 29 C.F.R. pt. 1630 App. § 1630.2(j).

**17.** The plaintiff should present evidence of: (1) the geographical area to which the individual has reasonable access; (2) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowl-

edge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or (3) the job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of an impairment. 29 C.F.R. § 1630.2(j)(3)(ii)(A)–(C).

er plaintiff was regarded as having a mental impairment.

### b. Regarded as Having Such an Impairment

█ The ADA broadly defines disabled to include those persons who have impairments which are not substantial limitations on a major life activity but who are regarded as substantially limited in a major life activity by their employers. *See* 42 U.S.C.A. § 12102(2)(C); *see also Kelly,* 94 F.3d at 108; *Nave,* 1997 WL 379174 at *8 (citing 29 C.F.R. § 1630.2(*l*)(3)); *Wilson,* 964 F.Supp. at 909. The focus of such an inquiry is not on the plaintiff's actual abilities but instead, is "on the reactions and perceptions of the persons interacting or working with [the plaintiff]." *Kelly,* 94 F.3d at 108–09 (citing 2 EEOC Compliance Manual, § 902, at 902–3 to 902–4).

█ However, an employer's acknowledgment of an impairment, without more, is not enough to show the employer regarded the employee as disabled. In *Kelly,* the Third Circuit explained that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment decision." *Id.* at 109 (where plaintiff walked with a visible and apparent limp court determined that knowledge of impairment was insufficient to show that employer regarded plaintiff as disabled); *Wilking,* 983 F.Supp. 848, 855.

█ In the instant case, most of the facts plaintiff proffers suggest nothing more than that defendant was aware of and even acknowledged plaintiff's impairment. The only relevant evidence that could possibly suggest that defendant regarded plaintiff as disabled are the following three incidents or comments: 1) the fact that Menzel took away the petty cash duties from plaintiff, 2) that Menzel may have stated that plaintiff would not be able to perform her job when she returned from medical leave, and 3) that Menzel may have told plaintiff she had her "ups and downs."

While it appears that Menzel did, in fact, take away the petty cash responsibilities after plaintiff made mistakes in handling it, this fact alone is not sufficient to show that Menzel perceived plaintiff as disabled and thus not able to learn, think, or concentrate or to perform a broad range of jobs or a classification of jobs. *See* (Letter from Menzel to Ms. Funk, 11/22/93)(indicating a problem with petty cash); *see also Soileau,* 928 F.Supp. at 51 (quoting *Heilweil v. Mt. Sinai Hosp.,* 32 F.3d 718, 723 (2d Cir.1994)) ("an impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one"); *Panzullo,* 968 F.Supp. at 1025 (plaintiff not disabled where impairment only precluded plaintiff from doing heavy lifting which was only a small part of the job).[18]

Plaintiff also argues that Menzel regarded her as disabled since a co-employee, Barbara Burhans, allegedly told plaintiff that she overheard Menzel tell another employee that plaintiff would never be able to handle the work she was doing when she returned from medical leave [19] and that Menzel told plaintiff that she had her "ups and downs." (Taylor Dep. 7/1/97 at 117–18; Taylor Dep. 5/27/97 at 141). Menzel denies making these statements. However, even if Menzel did make the statements and assuming the hearsay were reducible to an admissible form at trial, these statements do not show that Menzel regarded Taylor as substantially limited in her ability to perform major life activities *due to her impairment.* There is nothing inherent in either statement to indicate that Menzel's alleged belief that plaintiff could not

---

**18.** Further, overall Menzel increased the amount and levels of work assigned to plaintiff, which is inconsistent with perceiving her as disabled. *See* (Taylor Dep. 5/27/97 at 103, lines 14–25); *see also Wilking,* 983 F.Supp. 848, 856 (finding that increased performance expectations is indicative that employer did not regard as disabled); *Nave,* 1997 WL 379174 at *8; *Soileau,* 928 F.Supp. at 51; *Sarko,* 968 F.Supp. at 1035.

**19.** Hearsay can only be considered at the summary judgment stage if it is reducible to an admissible form at trial. *See Stelwagon Manufacturing Co. v. Tarmac Roofing Systems, Inc.,* 63 F.3d 1267, 1274 (3d Cir.1995); *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524 (3d Cir. 1990).

perform her job was due to plaintiff's perceived disability. *See generally Wilking,* 983 F.Supp. 848, 855 (finding that employer's statements that "this is a stressful place and it's not going to get better. This is not a good fit if someone has some vulnerability to stress as [Wilking] apparently does" and that it is "hard to know when you're a therapist and when you're a supervisor" were insufficient to establish that the employer regarded plaintiff as disabled); *Johnson v. Boardman Petroleum, Inc.,* 923 F.Supp. 1563, 1568–69 (S.D.Ga.1996)(finding that employer did not regard plaintiff as disabled where employer told plaintiff to seek professional help and told plaintiff she was physically and mentally incapable of continuing in her position).

Therefore, we find that plaintiff has not met the burden of providing sufficient evidence from which a reasonable jury could find that she was regarded as disabled within the meaning of the ADA. Thus, plaintiff can not meet the first element of a *prima facie* case under the ADA.

### 2. Was Plaintiff an Otherwise Qualified Individual With a Disability?[20]

Even if plaintiff were able to satisfy the first element of a *prima facie* case of disability discrimination, she still has not met prong two of a *prima facie* case as there is insufficient evidence from which a reasonable jury could conclude that plaintiff is an "otherwise qualified individual with a disability." *See Gaul,* 134 F.3d at 580.

The Third Circuit applies "a two-part test to determine whether someone is 'a qualified individual with a disability.'" *Id.* (quoting 29 C.F.R. pt. 1630, App. at 353–54).

First, a court must consider whether 'the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.' Second, the court must consider 'whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.'

*Id.* In making this determination, the relevant time frame is when the adverse employment decision was made. *Id.* Further, if an employee requests an accommodation, then the employee bears the burden of showing that the requested accommodation is possible or plausible. *See Gaul,* 134 F.3d at 580 (plaintiff must "make at least a facial showing that his proposed accommodation is possible"); *Shiring v. Runyon,* 90 F.3d 827, 832 (3d Cir.1996)("it falls to the employee to make at least a facial showing that such accommodation is possible"); *Walton,* 1997 WL 717053 at *11 ("plaintiff must show that a request for a possible or plausible accommodation was made"). If the requested accommodation is transfer to another department or supervisor, then a plaintiff must demonstrate, that "there were vacant, funded positions whose essential duties [she] was capable of performing with or without reasonable accommodation, and that these positions were at an equivalent level or position as [her][former job]." *Gaul,* 134 F.3d at 580 (quoting *Borkowski v. Valley Cent. School Dist.,* 63 F.3d 131, 138 (2d Cir.1995)); *Shiring,* 90 F.3d at 832; *see also Walton,* 1997 WL 717053 at *11.

Defendant is not arguing that plaintiff does not have the requisite education or background to satisfy the first part of the test to determine qualification. Instead, defendant argues that plaintiff has admitted that she could not perform the essential functions of her job.[21] *See* (Def.'s Mem. at 37). Plaintiff,

---

**20.** Defendant has also asked this Court to apply the judicial estoppel doctrine of *McNemar v. The Disney Store, Inc.,* 91 F.3d 610 (3d Cir.1996) to prevent plaintiff from claiming she was a qualified individual with a disability in these proceedings since plaintiff represented to the Social Security Administration that she was totally disabled. However, this Court again declines to do so because we find that the facts surrounding plaintiff's claims to the Social Security Administration do not show an intent by plaintiff to play

"fast and loose" with the Court as required by *McNemar. Id.*

**21.** At the Unemployment Compensation Board hearing on 2/23/95 plaintiff was represented by her lawyer as being unable to perform the essential functions of her job. (Taylor Dep. 7/1/97 at 96–97). Further, plaintiff has indicated that she was having difficulty adjusting to and complying with the higher standards and expectations that Menzel made for her. (Taylor Dep. 7/1/97 at 102).

however, contends that she would have been able to perform the essential functions of her job if she had been accommodated.[22] (Taylor Dep. 5/22/97 at 157 & 160).

■ Plaintiff states that she requested an accommodation in a meeting in March of 1994, when she allegedly inquired as to whether there were other positions to which she could be reassigned.[23] (Pl.'s Mem. at 24–25; Taylor Dep. 7/1/97 at 117–118). It is disputed whether plaintiff requested an accommodation for any limitations she may have suffered as a result of her impairment.[24] However, even if plaintiff's query as to whether there were other open positions could qualify as a request for accommodation, she still has not shown that this requested accommodation was possible or plausible. *See Gaul,* 134 F.3d at 580. In fact, when plaintiff asked Ferrara if there were any other open positions to which she could be transferred, Ferrara answered that there were none. (Taylor Dep. 7/1/97 at 117–18). Plaintiff testified that she agreed with Ferrara that there were no other open positions. (Taylor Dep. 7/1/97 at 118). As such plaintiff has not met the burden of showing that her "request" to be transferred to another position was a plausible or possible accommodation. *See Gaul,* 134 F.3d at 580–81.

Therefore, plaintiff has not produced sufficient summary judgment evidence to show that she was a "qualified individual with a disability." *See Lawrence,* 98 F.3d at 69 (finding summary judgment properly granted where plaintiff did not present sufficient evidence to allege or explain what actual accommodations were lacking). Thus, while the Court is not insensitive to the loss of employment after 20 years with the same employer, we simply cannot, on the record before us, find that plaintiff presents sufficient evidence to satisfy prongs one or two of a *prima facie* case of failure of accommodate under the ADA. Therefore, defendant's Motion for Summary Judgment will be granted on the Failure to Accommodate Claim.

### B. Disparate Treatment Claim

In as much as plaintiff attempts to bring a disparate treatment claim, she has not produced sufficient evidence from which a reasonable jury could find for her on such a claim.[25] A disparate treatment claim operates under the burden shifting analysis of

---

**22.** Plaintiff has also testified that she would be able to perform the essential functions of her job as long as she did not have to work for someone like Menzel. (Taylor Dep. 5/27/97 at 160, 189–90). *See Weiler v. Household Finance Corp.,* 101 F.3d 519, 525 (7th Cir.1996) (finding plaintiff not disabled since she could do the same job for another supervisor).

**23.** Plaintiff, however, does not state that she informed defendant that her request was motivated by limitations she may have been experiencing due to her disability. *See Geuss,* 1996 WL 729048 at n. 13 ("It is not enough for the employee to make vague suggestions or references in this regard."); *see also Taylor,* 93 F.3d at 165 (plaintiff's request for accommodation that his objectives be reduced and that the pressure be lessened was "too indefinite and ambiguous to constitute a formal request for accommodation under the ADA.").

Further, plaintiff's argument that her son, Mark Taylor, requested accommodations is likewise insufficient. Aside from Mark Taylor arranging with defendant that plaintiff be allowed to initially return to work for half days, there is no evidence that Mark Taylor specifically told the school district of any *limitations* plaintiff suffered as a result of her impairment or that those limitations needed to be accommodated. *See* (Aff.

Mark Taylor); *see also Taylor,* 93 F.3d at 163–64 (discussing distinction between having an impairment and having a limitation).

**24.** The ADA does not require that an accommodation be requested using specific language, but a plaintiff must make known that accommodation for the limitations is necessary. *See Walton,* 1997 WL 717053, *10 (E.D.Pa.); *Geuss,* 1996 WL 729048 at *6 & n. 13; *see also Hunt–Golliday v. Metropolitan Water Reclamation District of Greater Chicago,* 104 F.3d 1004, 1012 (7th Cir.1997)(employee has the initial duty to inform the employer of disability); *Taylor,* 93 F.3d at 165 ("[w]here ... mental disabilities are involved, the initial burden rests primarily upon the employee, or his health-care provider, to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations").

**25.** Plaintiff's allegations of disparate treatment are that Menzel communicated with plaintiff through a folder for messages on Menzel's desk whereas Menzel communicated directly to the substitute secretary and that Menzel did not take pictures of anyone else's desks or work areas. However, plaintiff has not presented any evidence but has only offered conclusory allegations.

*McDonnell Douglas.* *See McNemar v. Disney Store, Inc.,* 91 F.3d 610, 619 (3d Cir. 1996); *Lawrence v. National Westminster Bank New Jersey,* 98 F.3d 61, 68 (3d Cir. 1996); *Walton,* 1997 WL 717053 at *10. Thus, in order to make out a disparate treatment claim, plaintiff must first demonstrate a *prima facie* case of discrimination. Then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the discharge. If defendant makes this showing, plaintiff has the opportunity to demonstrate that the stated reason is actually a pretext for discrimination. *See Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994). To do this, plaintiff must (1) discredit the proffered reasons for termination either directly or circumstantially or (2) adduce evidence that discrimination was more likely than not a motivating or determinative factor for the termination. *See Lawrence,* 98 F.3d at 65; *Walton,* 1997 WL 717053 at *3.

A *prima facie* case for disparate treatment requires a showing that plaintiff (1) belongs to a protected class; (2) was qualified for the position; (3) was dismissed despite being qualified; and (4) was ultimately replaced by a person sufficiently outside the protected class to create an inference of discrimination. *Walton,* 1997 WL 717053 at *4. As the first two elements of this *prima facie* case involve the same analysis as the first two prongs of the failure to accommodate claim, we have already determined that plaintiff has not met these two elements. Moreover, plaintiff has also failed to make a showing of an inference of discrimination to satisfy a *prima facie* case. *See Wooten,* 986 F.Supp. 524, 533 (*prima facie* case requires evidence to create an inference of discriminatory motive). Assuming for the moment that plaintiff can present sufficient evidence to show that she was a qualified individual with a disability, she must also present sufficient evidence to create an inference that she was treated less favorably than other non-disabled employees. *See Walton,* 1997 WL 717053 at *5 (the 3rd and 4th prongs of a *prima facie* case require a showing that a plaintiff "was dismissed despite being qualified and replaced with someone sufficiently

outside the class to create an inference of discrimination"); *Wooten,* 986 F.Supp. 524, 528.

Plaintiff has presented no evidence to show that non-disabled employees were treated differently than she was. Plaintiff has not even presented evidence that she was replaced by someone outside the alleged class so as to create an inference of discrimination. *See Walton,* 1997 WL 717053 at *5. Without such evidence she can not make out a *prima facie* case of disparate treatment. *See Wooten,* 986 F.Supp. 524, 528.

Further, even if plaintiff could establish a *prima facie* case, she has not presented sufficient evidence to show that defendant's proffered reason for terminating her was a pretext. Defendant's have met their burden of showing a legitimate, non-discriminatory purpose for her termination. *See Emberger v. Deluxe Check Printers,* 1997 WL 677149, *4 (E.D.Pa.); *Nanopoulos v. Lukens Steel Co.,* 1997 WL 438463, *4 (E.D.Pa.). Plaintiff's errors and omissions are well documented in the nine memoranda from defendant. Some of the errors were of greater consequence than others, but they all show that plaintiff was not performing up to the standards set by her principal, Menzel. In fact, plaintiff admits that she was not performing up to the standards set by Menzel and that she made many errors. *See* (Taylor Dep. 7/1/97 at 102).

Plaintiff has the burden to provide some evidence to discredit defendant's proffered reason. *See Walton,* 1997 WL 717053 at *8. Plaintiff, however, merely makes conclusory allegations that defendant's stated reason for termination—her poor performance—was a pretext since she received strong performance reviews for her first 19 years of employment and only received poor reviews after she returned from her hospitalization. These conclusory allegations, without more, are insufficient. *See* Fed.R.Civ.P. 56; *Walton,* 1997 WL 717053 at *8. Therefore, defendant's Motion for Summary Judgment is granted as to the disparate treatment claim.[26]

**26.** As the motion for summary judgment has

been granted on the substantive claims, there is

*III. Conclusion*

An appropriate Order follows.

## ORDER

AND NOW, this 20th day of March, 1998, upon consideration of Defendant's Motion for Summary Judgment and Plaintiff's Response thereto as well as the Supplemental Responses filed by the parties, it is hereby ORDERED that, for the reasons set forth in the foregoing Memorandum, the Motion is GRANTED.

no need to address defendant's motion for summary judgment on the punitive damages claim.