**Margaret BALLS, Plaintiff,**

v.

**AT & T CORP., Defendant.**

**Civil Action No. 98–1016.**

United States District Court,
E.D. Pennsylvania.

Dec. 4, 1998.

Joseph A. Ferry, Carosella & Ferry, P.C., West Chester, PA, for Plaintiff.

Daniel V. Johns, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Defendant.

### *MEMORANDUM AND ORDER*

KATZ, District Judge.

Plaintiff Margaret Balls has sued her former employer, AT & T, alleging that AT & T discriminated against her in violation of the Americans with Disabilities Act (the ADA) by removing her from its payroll after she collected short-term disability benefits for a year for her carpal tunnel syndrome. Before the court are AT & T's motion for summary judgment and Ms. Balls's response. For the reasons discussed below, the court will grant the motion and dismiss the case.

*Relevant Facts*

AT & T hired Margaret Balls on December 7, 1992 as a Communications Assistant (CA) in AT & T's Communications Services Organization in Wayne, Pennsylvania. The job of a CA is to provide relay services to deaf, hard-of-hearing, and speech impaired telephone customers. *See* Def. Ex. B (AT & T Communications Assistant Job Description). Basically, the CA's job is to facilitate phone calls between customers using a tele-

phonic device for the deaf (TDD) and customers on regular phones: the TDD user types in his or her part of the conversation, the CA sees it on a screen and reads it out loud to the person on the regular phone. The phone user speaks back, the CA types in each word, and the TDD user sees that part of the conversation on a screen at his or her device.

One primary job requirement is that a CA must be able to type forty-five words per minute. *See* Def. Ex. B. Ms. Balls testified in her deposition that in order to keep up with the verbatim phone conversations, it was necessary to type sixty to seventy words per minute, and while she was working the job she typed between seventy and eighty words per minute. *See* Def. Ex. A (Balls Depo.) at 55. Ms. Balls recollected that she handled roughly 900 calls a week, which calls could of course vary widely in length, and at least seventy percent of her time on each call was spent typing. *See* Def. Ex. A at 46, 55.

In December 1993, Ms. Balls informed her supervisor that she had pain in her hands and arms which prevented her from doing her job. *See* Def. Ex. A at 87. She filled out the paperwork to apply for short-term disability. *Id.*[1] She was approved as disabled on December 15, 1993, and she received disability payments for the full fifty-two weeks allowed under the program.

In November, one month before her short-term benefits were to run out, Ms. Balls applied for long-term disability under AT & T's plan. Disability for those purposes means that "the employee is prevented by reason of such sickness or injury from engaging in any occupation or employment for which the employee is qualified, or may reasonably become qualified, based on training, education, or experience." Def. Ex. M (let-

ter from AT & T to Ms. Balls). Her application for long-term benefits was denied.

Plaintiff also applied for Social Security disability benefits. In so doing, Ms. Balls had to certify that she was totally disabled and completely unable to work. Plaintiff's claim was ultimately denied, after consideration through the full administrative review and appeals process.

After AT & T denied plaintiff's claim for long-term disability, she sued the company in state court. In her complaint, she alleged that she was "entitled to a full 18 months of long-term benefit pay." Def. Ex. O. She further stated that the disability pay "has no bearing on any other compensations I will be entitled to, such as ... EEOC." *Id.* The case was removed to federal court, and plaintiff filed a Definitive Statement of Allegations that said, among other things, that she was unable to work and entitled to disability pay. Def. Ex. P.

In March 1998, Ms. Balls filed an amended federal tax return for 1995, indicating that she was permanently and totally disabled. *See* Def. Ex. Q. That status requires that the person "cannot engage in any substantial gainful activity because of a physical or mental condition." *Id.* at 4.

When her short-term disability payments ran out in December 1994, AT & T did not return plaintiff to work. In February 1998, Ms. Balls filed the present lawsuit, claiming that she was able to work in 1994 and that AT & T discriminated against her because of her carpal tunnel syndrome in violation of the ADA.

*Discussion* [2]

To make out a prima facie case of discrimination under the ADA, the plaintiff must

---

**1.** Under the AT & T disability plan, an employee is considered disabled if the relevant committee "determines that you are unable to perform the duties of your job and you cannot be accommodated at another job within the Company." Def. Ex. D (AT & T "About Your Benefits" Handbook) at 226.

**2.** Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter. Rather, it determines whether or not there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, all of the facts must be viewed in the light most favorable to, and all reasonable inferences

prove that (1) she has a disability; (2) she is a qualified individual, i.e., she can perform the essential functions of the job with or without reasonable accommodations by the employer; and (3) she has suffered an adverse employment action because of her disability. *See Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir.1998); *see also* 42 U.S.C. §§ 12111(8), 12112(a). Plaintiff here cannot make out a case for three reasons: first, she cannot prove that she is a qualified individual because she is judicially estopped from so claiming; second, she cannot prove that she is a qualified individual because she cannot prove she could perform the essential functions of the job; and third, she cannot prove that she is disabled, because she has not presented the evidence necessary to show that her condition substantially limits a major life activity.

*Judicial Estoppel*

■ Judicial estoppel bars this claim because plaintiff claimed total disability in prior proceedings, inconsistently with her position in this case. *See McNemar v. Disney Store, Inc.*, 91 F.3d 610 (3d Cir.1996), *cert. denied,* 519 U.S. 1115, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997). Although it has been criticized, *McNemar* remains the law in this Circuit. *See Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502–03 (3d Cir.1997). The *Krouse* court emphasized, though, that *McNemar* requires the court to examine the individual facts of the case by carefully adhering to the two-prong test set forth in *Ryan Operations v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir.1996):(1) is the current position inconsistent with the prior positions, and (2) does the plaintiff assert either or both of the positions in bad faith, i.e., with the intent to play fast and loose with the court.

The court finds that Ms. Balls's statements of her inability to work in her application for long-term disability benefits, her application for social security disability benefits, her small claims complaint and statement in federal court in that case, and her tax return are inconsistent with her current position that she was able to work. Based on the number and plainness of these statements, the court further finds that Ms. Balls has made the inconsistent statements in bad faith.

*Qualified Individual.*

■ Even if judicial estoppel does not bar plaintiff's claim, she is unable to prove that she is a qualified individual, because it is undisputed that she is unable to type forty-five words per minute to relay messages of hearing-impaired customers for eight hours a day which is an essential part of the job. A job function is essential if, inter alia, "the reason the position exists is to perform that function." 29 C.F.R. § 1630.2(n)(2)(i). AT & T's Job Description for the position of Communications Assistant states, "The primary focus of this function is to service the customer effectively by relaying conversations accurately, transparently and confidentially." *See* Ex. B. The description further states, "The qualifications of a Communications Assistant include the ability to: Type a minimum of 45 wpm without error." *Id.* At her deposition, Ms. Balls confirmed that typing 45 words per minute is a qualification for the job, and stated that she could not do so. *See* Ex. A at 43 (confirming that the statement of the function and qualifications contained in the job description is accurate), 141–42 ("I was not able to do computer keyboarding for a full eight-hour day plus other overtime that was demanded.").

■ Apart from one general question about alternative work, *see* Pl.Ex. A (letter from plaintiff's then-counsel to AT & T, asking "Is there some type of work which she can perform which is within her limitations?"), the only request for accommodation that the record demonstrates was communi-

must be drawn in favor of, the non-moving party. *See id.* at 256, 106 S.Ct. 2505.

The moving party has the burden of showing there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mathews v. Lancaster General Hosp.*, 87 F.3d 624, 639 (3d Cir.1996). In response, the non-moving party

must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989).

cated to AT & T is a suggestion that, instead of typing, Ms. Balls could use some sort of voice-activated technology. During her short-term disability leave, her doctor mentioned this possibility in the last two updates of her condition.[3] Assuming these two comments constituted a request for accommodation, it is unreasonable as a matter of law, because "[a]ccommodations that are 'reasonable' must not unduly strain financial resources." *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1386 (3d Cir. 1991). The Declaration of William Sheeley, the Network Service Manager for AT & T, explains that "[t]here was no voice-activated technology applicable to the Wayne Relay Center that was available in 1994," and that even the voice-activated technology that has been developed since "would cost AT & T more than $12 million and likely would take more than 2 years to complete." Def. Ex. V.[4] An employer is not required to provide an accommodation that would impose an undue hardship on the operation of the employer's business. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(p). "The term 'undue hardship' means significant difficulty or expense in, or resulting from, the provision of the accommodation." *Id.* Spending twelve million dollars on a two-year process involving the steps Mr. Sheeley describes is an undue hardship, and the ADA does not require AT & T to do it.[5]

■ Another accommodation discussed in the motion is that Ms. Balls type for no more than two hours a day. At her deposition, Ms. Balls said that Dr. Huxster suggested this possibility, although she said she was not sure if it meant she could not type more than

two hours in a row or two hours total in a day. *See* Def. Ex. A at 108–10. Ms. Balls also testified that the two-hour restriction suggestion was communicated to AT & T by Dr. Huxster by fax, *see id.* at 110, but there is no evidence in the record that such a suggestion actually was ever made to AT & T by plaintiff or any doctor. Because 75% of the job time is spent typing, this proposed "accommodation" amounts to a proposal that Ms. Balls not work full-time. As Ms. Balls herself explained at her deposition, even a single phone call could be "even a three-hour conversation," *see* Def. Ex. A at 46, so a two-hour limit is incompatible with the requirements of the job. *See Washington v. Andersen Consulting, LLP,* No. 97–C–2765, 1997 WL 106262, at *4 (N.D.Ill. Feb.13, 1997) (where plaintiff's carpal tunnel syndrome made her unable to type more than three hours a day and where typing was an essential function of her job, she was not qualified to do the job and her employer did not violate the ADA by firing her).

*Disability*

■ Plaintiff's claim must be dismissed for the further reason that she fails to meet another prong of the prima facie case, namely the requirement that she have a disability. An individual is disabled under the ADA if she has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Major life activities are "functions such as caring for oneself, performing manual tasks, walking, seeing,

---

3. First, in a Physician's Report Of Illness or Injury dated June 20, 1994, Dr. Huxster said "could return to work on trial bases [sic], attempting to limit use of [right] hand for keyboarding. (Voice activated equipment?)" Def. Ex. J. Second, in an On–Duty Injury/Illness Report dated August 16, 1994, he said "Non-keyboarding activities (Voice activated equipment?) avoid strenuous/repetitive use of hands." Def. Ex. K.

4. Mr. Sheeley further explains that his estimate of the expense is based on the cost of

"replacing over 650 computers, expanding the memory control units (SCU's) to 20 times their current size, building new centers to handle the same call volume, expanding the equipment rooms to handle the larger equipment

needs, and providing at least 6 hours of training the system software to recognize each individual employee's voice patterns for more tan 600 employees. It is impossible for AT & T to install a voice activated system for only one employee as each computer is inter-tied and it is impossible to break this network for a single computer."

Def. Ex. V.

5. Providing voice-activated technology is unreasonable for an additional reason: " 'reasonable accommodation' does not mean elimination of any of the job's essential functions." *Gilbert v. Frank,* 949 F.2d 637, 642 (2d Cir.1991). Using a voice-activated system instead of typing would change the fundamental nature of the job, which is essentially a typing job.

hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Plaintiff claims that her carpal tunnel syndrome substantially limited her major life activity of working, because it made her unable to type for eight hours a day.[6]

Under the ADA, an individual is considered substantially limited in the major life activity of working if the individual is "significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i); *see also Olson v. General Elec. Astrospace,* 101 F.3d 947, 952 (3d Cir.1996) (applying that section).

To determine whether an individual is significantly restricted from performing a broad range of jobs, the regulations say that the following factors may be considered:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical are, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii). The regulations further explain that although these factors "are not intended to require an onerous evidentiary showing," they do "require the pre-

sentation of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., 'few,' 'many,' 'most') from which an individual would be excluded because of an impairment." 29 C.F.R. Pt. 1630 App. § 1630.2(j).

■ Based on those requirements, "a plaintiff must present demographic evidence to show from what jobs in her geographic area plaintiff has been excluded due to her disability. A plaintiff's failure to do so is fatal at summary judgment." *Taylor v. Phoenixville School Dist.,* 998 F.Supp. 561, 568 (E.D.Pa.1998) (internal quotes and cites omitted); *see also Ellis v. Mohenis Services Inc.,* No. Civ. A. 96–6307, 1998 WL 564478 at *4 (E.D.Pa. Aug.24, 1998) (where plaintiff did not offer the required demographic evidence of jobs he was disqualified, "the record cannot support a finding that [plaintiff] was precluded from employment in an entire class or a broad range of jobs").

Plaintiff has presented no such evidence. Plaintiff does not even argue that she was unable to perform a broad range of jobs; in fact, she argues that there were many jobs even within AT & T that she could have performed (an argument which is also without record support). Without evidence that her condition precluded her from performing a broad range of jobs, plaintiff cannot make out the disability element of her prima facie case.

*Conclusion*

For these reasons, AT & T's summary judgment motion will be granted and the case will be dismissed. An appropriate Order follows.

### ORDER

**AND NOW,** this 4th day of December, upon consideration of the Motion for Summary Judgment of Defendant AT & T and

---

**6.** Defendant's motion states that plaintiff may also claim that she is limited in the major life activity of performing manual tasks. If she did so argue, the court would consider the manual task limitation claim first, because "[i]f an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working." 29 C.F.R. Pt. 1630, App. § 1630.2(j). In her response to this motion, however, plaintiff does not pursue the manual task limitation argument, so the court will make a determination as to whether she is limited in working.

the response thereto, it is hereby **OR-DERED** that said Motion is **GRANTED.**